LaSALLE NATIONAL BANK, Plaintiff–Counterdefendant,

v.

OWENS–ILLINOIS, INC., Defendant–Counterplaintiff.

OWENS–ILLINOIS, INC.,
Third–Party Plaintiff,

v.

The BANKRUPTCY ESTATE OF CROWN PRODUCTS, INC., and Jay Steinberg, in his representative capacity, and not in his personal capacity, as trustee of the bankruptcy estate of Crown Products, Inc., Third–Party Defendants.

No. 93 C 7045.

United States District Court,
N.D. Illinois, Eastern Division.

May 1, 1995.

William G. Swindal and Daniel J. Beiderman, Hinshaw & Culbertson, Chicago, IL, for plaintiff.

Eugene J. Geekie, Jr., Gabriel M. Rodriguez and Thomas Patrick Heneghan, Schiff, Hardin & Waite, Chicago, IL, for defendant.

Michael B. Solow, Christopher W. Zibart and Mark Alan McDermott, Hopkins & Sutter, P.C., Chicago, IL, for third-party defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, LaSalle National Bank ("LaSalle"), is a secured creditor of Crown Products, Inc. ("Crown"), holding a mortgage on property that is now an asset of the Bankruptcy Estate of Crown (the "Estate"). LaSalle filed the present lawsuit against defendant Owens–Illinois, Inc. ("Owens") seeking recovery of response costs it has incurred in investigating that property. LaSalle's complaint requests reimbursement of these monies under Sections 107(a) and 113(f)(1) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendment and Reauthorization Act of 1986 ("CERCLA") and a declaratory judgment on liability for response costs or damages under Section 113(g) of CERCLA. 42 U.S.C. §§ 9607(a), 9613(f)(1), 9613(g). Owens has filed a motion for summary judgment contending that LaSalle lacks standing to bring its action. LaSalle has filed a cross-motion for summary judgment arguing that it may maintain its claim. For the reasons discussed below, Owens' summary judgment motion is granted in part and denied in part, and LaSalle's summary judgment motion is denied.

### Undisputed Facts

LaSalle is a federally chartered bank with its principal place of business in Chicago, Illinois. Owens is a Delaware corporation with its principal place of business in Toledo, Ohio. The property that is the subject of this lawsuit, a 40–acre parcel of land located at 1600 Powis Court, West Chicago, Illinois ("the Property"), was owned by Owens from the late 1940s until December 1986. Owens operated a manufacturing facility at the Property until approximately 1984 when manufacturing operations ceased.

In 1986, Crown, an Illinois corporation, acquired the Property from Owens and operated a plant on the Property until 1993. The Estate is the successor in interest to Crown and is the current owner of the beneficial interest of the land trust that holds title to the Property. Jay Steinberg ("Mr. Steinberg") is the bankruptcy trustee (the "Trustee") of the Estate.

The sales agreement executed by Owens and Crown in 1986 set forth the terms of the acquisition, stated that Owens had disclosed to Crown that portions of the Property had

been used for waste disposal in the past and that Owens had informed the United States Environmental Protection Agency of this fact and included an environmental indemnification agreement pursuant to which Owens agreed to indemnify Crown for liabilities arising from certain specified conditions.

About a year after the closing, the parties entered into a new agreement altering the terms of the initial agreement in part by releasing Owens from all obligations under the environmental indemnity agreement. The new agreement was embodied in a release dated December 3, 1987.

About two years later, in 1989, Crown and Exchange National Bank (LaSalle's predecessor by merger) began negotiations for the extension of credit to Crown. LaSalle provided Crown a line of credit secured by inventory, equipment and accounts receivable.

At the same time, Crown was in the process of developing an industrial park financed by industrial revenue bonds issued by the Illinois Development Finance Authority ("IDFA"). The IDFA bonds were backed by a $5.5 million stand-by letter of credit issued by American National Bank and secured by Crown's West Chicago real estate. In July, 1990, LaSalle replaced American National by stepping in as the issuer of the stand-by letter of credit. The stand-by letter of credit was secured by an assignment of the beneficial interest in the land trust holding title to Crown's real estate.

In early 1993, Crown filed for Chapter 11 protection. LaSalle provided Crown with post-petition, or debtor-in-possession, financing. Mr. Steinberg was appointed Trustee on July 27, 1993. The case was then converted from a Chapter 11 reorganization to a Chapter 7 liquidation.

The Trustee was advised by counsel that he could not abandon the Property without first conducting an environmental investigation to determine whether the Property was impacted by hazardous substances. In August, 1993, the Trustee filed a motion seeking the bankruptcy court's authorization to enter into an environmental services agreement with the Illinois Environmental Protection

Agency ("IEPA") calling for the preparation of a work plan to investigate the conditions of the site. The motion and order entered by the bankruptcy court stated that LaSalle would advance the funds necessary to fulfill the obligations of the Estate and the agreement. In fact, LaSalle has spent funds on an environmental investigation of the Property.

In August, 1993, the Trustee informed Owens by letter that the Property was contaminated with hazardous substances due to a release from the facility operated by Owens and requested that Owens participate in site investigation and clean-up. Owens responded by reminding the Trustee about the release of liability executed between Crown and Owens. On November 18, 1993, LaSalle filed the complaint in this case seeking recovery of its response costs from Owens on the basis that Owens' manufacturing process caused a release of hazardous substances for which LaSalle has incurred response costs.

### Standard of Review

■ Summary judgment disposes of a claim before trial in instances where a trial is unnecessary and can only result in delay and expense. *Ford Motor Credit Co. v. Devalk Lincoln–Mercury, Inc.*, 600 F.Supp. 1547, 1549 (N.D.Ill.1985). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). A genuine issue of fact exists when a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). All reasonable inferences must be drawn in favor of the non-moving party; however, the mere possibility that a factual issue might exist is not an adequate basis for denying a summary judgment motion. *Powers v. Dole*, 607 F.Supp. 841, 844 (N.D.Ill.1984).

### Whether LaSalle May Bring a Claim Against Owens Under CERCLA Section 107(a)

■ If LaSalle stands in the shoes of the Trustee, as Owens argues, it is clear that it cannot maintain this action. The Trustee represents Crown, and Crown gave up its

right to bring this action pursuant to its agreement with Owens. Owens' argument that LaSalle is in this position is that LaSalle agreed to pay for the cost of an action that the Trustee undertook to fulfill the obligations of the Crown Estate. Furthermore, the Trustee maintained that he had an obligation to undertake that investigation,[1] and did so with the approval of the bankruptcy court. Thus, argues Owens, LaSalle is really a guarantor or subrogee of the Trustee. Guarantors and subrogees have been held to be limited to the rights of the underlying principal. *E.g., Mid–State Fertilizer v. Exchange National Bank,* 877 F.2d 1333 (7th Cir.1989); *In re T.P. Long, supra,* 45 B.R. at 287.

*Mid–State Fertilizer* recognized, however, that a guarantor would not be limited to the rights of its principal if it had its own injury. 877 F.2d at 1336 ("When they suffer direct injury—injury independent of the firm's fate—they may pursue their own remedies."). That is part of LaSalle's argument here. LaSalle says it decided to pay for the investigation although it had no legal obligation to do so, in order to protect its own security interest in the assets of the estate. According to LaSalle, unless the property is cleaned up it has no value (the Trustee has not been able to sell it). LaSalle says that while the cost of the clean-up may be high, the property's value once it has been cleaned up will exceed the cost of clean-up. It therefore has an interest that is separate from any role as a guarantor. Owens does not dispute LaSalle's interest. I conclude that it is separate from a role of guarantor and that it is sufficient to give it standing to bring a claim under CERCLA. *See Northwestern Mutual Life v. Atlantic Research Corporation,* 847 F.Supp. 389 (E.D.Va.1994).

Since I conclude that LaSalle has standing to protect its own interest, I need not determine the correctness of LaSalle's alternative argument that the language of CERCLA would allow it to recover costs of response even if it was a volunteer. CERCLA provides that "[n]otwithstanding any other provision or rule of law ... any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of ... shall be liable for ... costs of response incurred *by any other person* consistent with the national contingency plan." 42 U.S.C. sec. 9607(a). (Emphasis added.) It is undisputed for purposes of this motion that the costs incurred by LaSalle were pursuant to the National Oil and Hazardous Substances Pollution Contingency Plan. 40 C.F.R. Part 300. There is support for LaSalle's argument that "any person" should be read literally. *General Electric Company v. Litton Business Systems, Inc.,* 715 F.Supp. 949, 956 (W.D.Mo.1989).[2]

Since LaSalle has shown sufficient direct interest in recovery of costs incurred in response to a release or threatened release of a hazardous substance, Owens' motion for summary judgment on LaSalle's claim under Section 107(a) of CERCLA, 42 U.S.C. sec. 9607(a), is denied.

### Whether LaSalle May Bring a Claim Against Owens Under CERCLA Section 113

LaSalle also seeks standing under section 113(f) of CERCLA. 42 U.S.C. sec. 9613(f). That section permits "any person" to "seek contribution from any *other* person who is liable or potentially liable under section 9607(a) of this title." (Emphasis added.) LaSalle focuses on the words "any person" but ignores the qualifying "other" which, as the Seventh Circuit has held, appears to limit the action under this section to a plaintiff who is itself a responsible party. *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir.1994). Since no one in this action is claiming that LaSalle is a responsible party (that is, one who may be liable under section 9607 for cleanup costs), LaSalle cannot maintain this action under section 113. Owens is

---

1. The Trustee's argument finds support in 11 U.S.C. sec. 503(b)(1)(A); *In re Environmental Waste Control, Inc.,* 125 B.R. 546 (N.D.Ind. 1991); and *In re T.P. Long Chemical,* 45 B.R. 278, 286–87 (N.D.Ohio 1985).

2. The potential conflict between the CERCLA language and the limitations on the right of a guarantor need not be resolved since LaSalle has shown a direct interest, as indicated above.

therefore entitled to summary judgment on this claim.

### Conclusion

For the reasons set forth above, Owens' motion for summary judgment is granted in part and denied in part.